Filed 9/6/22  P. v. Singh CA5
See concurring & dissenting opinion

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>HARMAN PREET SINGH,<br><br>Defendant and Appellant. | Consolidated Cases Nos.<br>F082580 & F082584<br><br>(Super. Ct. Nos. MCR060145,<br>MCR060560)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Dale J. Blea, Judge.

Joshua G. Wilson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, Christopher J. Rench, and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**SEE CONCURRING AND DISSENTING OPINION**

Defendant Harman Preet Singh challenges the trial court's conclusion he violated a condition of probation, resulting in a revocation of that probation. Through supplemental briefing, defendant also challenges the sentence imposed as violating Penal Code[1] section 1170, following amendments to that provision effective January 1, 2022. We affirm.

## PROCEDURAL SUMMARY

This opinion addresses two separate appeals from cases brought against defendant in the Madera County Superior Court cases Nos. MCR060145 and MCR060560. On this court's own motion, the appeals were consolidated. On August 20, 2018, the Madera County District Attorney filed a complaint against defendant in case No. MCR060145, alleging defendant committed arson (§ 451, subd. (d); count 1) and attempted to set fire to a structure (§ 455; count 2). On September 28, 2018, the Madera County District Attorney filed a second amended complaint against defendant in case No. MCR060560, alleging he made a criminal threat that was likely to result in death or great bodily injury to his mother (§ 422, subd. (a); count 1), made a criminal threat that was likely to result in death or great bodily injury to his father (§ 422, subd. (a); count 2), and committed misdemeanor battery against his mother (§ 242; count 3).

On April 22, 2019, defendant pled guilty to count 1 in case No. MCR060560. During the same hearing, defendant also pled guilty to count 1 in case No. MCR060145. The trial court then suspended imposition of sentence and placed defendant on probation for a period of five years for both cases Nos. MCR060145 and MCR060560, and dismissed the remaining counts alleged against him. At the time probation was granted, various conditions were imposed, including requirements that defendant attend all future court appearances and "[r]eport monthly or as directed by the Probation Officer."

---

[1] All future statutory references are to the Penal Code unless otherwise noted.

On September 29, 2019, a petition to revoke defendant's probation was filed in case No. MCR060560. A similar petition was filed in case No. MCR060145 on September 30, 2019. While both petitions stated defendant failed to "[r]eport monthly or as directed by the Probation Officer," the petition in case No. MCR060145 also included the failure to register as required by section 457.1 (requiring registration after a conviction for arson). On August 21, 2020, defendant admitted the violations listed in both petitions. On September 21, 2020, the trial court ordered defendant to serve 120 days in jail in case No. MCR060145, then reinstated the same terms and conditions of probation in both cases as set out earlier.

New petitions to revoke probation were filed on November 13, 2020, alleging defendant violated two conditions of probation in each case. Specifically, both petitions alleged defendant failed to "[o]bey all laws, federal, state and local," and did not "[r]eport monthly or as directed by the Probation Officer." Following a contested hearing, defendant was found to have violated the probation condition requiring him to report to his probation officer as ordered.

On March 24, 2021, the trial court revoked defendant's probation and sentenced him to three years (the upper term) on count 1 in case No. MCR060145 and designated this the principal term. The trial court then imposed a consecutive term of eight months (one-third the middle term of two years) for count 1 in case No. MCR060560,[2] for a total prison term of three years eight months.

---

[2] The trial court indicated it imposed a sentence on count 2 of case No. MCR060560. However, defendant pled guilty to count 1 in case No. MCR060560 and count 2 was dismissed. Both counts alleged a violation of section 422. Other than being imposed on the wrong count, the sentence imposed was consistent with the plea agreement. The trial court mistakenly imposed a sentence on count 2 that should have been imposed on count 1. Defendant need not be resentenced over what amounts to a clerical error. In this situation, we treat as done that the parties agreed to have done and which should have been done. (*Godfrey v. Witten* (1956) 138 Cal.App.2d 610, 615.) We

On the same date, defendant filed a notice of appeal as to both cases.

## FACTUAL SUMMARY[3]

### Case No. MCR060145

On August 17, 2017, Madera Police Officer Kellom was dispatched to assist "Cal Fire" (Department of Forestry and Fire Protection) personnel who were fighting a fire near a home. The individual who was seen setting the fire on surveillance footage returned to the scene while the firefighters were there. The firefighters pointed out this individual, who was later identified as defendant, to Kellom. Kellom reported defendant smelled of alcohol, seemed agitated, and tried to leave. Defendant was detained and placed in the back of Kellom's vehicle. A lighter was eventually found in defendant's front pocket.

### Case No. MCR060560

On September 23, 2018, Madera Police Officer Garcia was dispatched to a home where he encountered defendant's brother. Defendant's brother reported defendant threatened to assault their mother after getting angry. His brother also stated defendant grabbed an oxygen tank and threatened to "blow up the house and kill his family."

### Probation Revocation Proceedings

The revocation hearings for both cases Nos. MCR060145 and MCR060560 were held concurrently on December 4, 2020. During the hearing, Madera County Probation Officer Magallanes testified defendant was required to report to the probation department at least monthly, and that he was specifically instructed to report on November 3, 2020. Defendant did not meet with Magallanes on November 3. Magallanes also determined there were no records showing defendant met with anyone else in the probation

---

will direct the trial court to issue an amended abstract of judgment reflecting that the eight-month term of imprisonment was imposed on count 1 of case No. MCR060560.

[3] The specific facts underlying the charges in our factual summary are found in the probation reports.

4.

department on November 3. Magallanes testified that in the past defendant kept some appointments, but not all.

Defendant testified in his own behalf and admitted knowing he had an appointment with probation on November 3, 2020. Defendant testified he called the probation department on November 3, and that it was "on [his] phone history." Defendant claimed he was unable to reach anyone in the office because no one picked up the phone. During his testimony, defendant mentioned he had been arrested, but provided no specific evidence verifying this fact. On cross-examination, defendant admitted that his attempt to call probation did not occur until two to three days after November 3, 2020.

At the conclusion of the hearing, the trial court found defendant "violated the terms of his probation in failing to contact [the probation department] on the date specified," and that this violation applied to both cases.

## DISCUSSION

### I. The Revocation of Probation

Defendant argues the revocation of his probation was improper because the trial court permitted the People to prove his state of mind to a lesser standard than that required by case law. Specifically, defendant contends the trial court used a strict liability test rather than one considering whether his violation of a condition of probation was "willful." Both below and on appeal, defendant appears to suggest the violation of the probation condition was "negligent" rather than "willful." We do not agree with defendant's characterization of the case law on this issue and the distinctions he is attempting to draw.

When an individual is suspected of violating terms or conditions of their probation, they may be rearrested and subject to a hearing at which the trial court considers whether to revoke probation and impose a sentence. (§ 1203.2.) The prosecution has the burden of proving the grounds supporting revocation by a

5.

preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 447.) Case law has held a decision to revoke probation can be supported by the conclusion it serves the " 'interests of justice.' " (*People v. Galvan* (2007) 155 Cal.App.4th 978, 981.) While the facts supporting revocation may be proven by a preponderance of the evidence, "the evidence must support a conclusion the probationer's conduct constituted a willful violation of the terms and conditions of probation." (*Id*. at p. 982.)

Ultimately, the evidence must show a defendant has not complied with the terms of probation, justifying the revocation of probation. (*People v. Urke* (2011) 197 Cal.App.4th 766, 772 (*Urke*).)

> " 'Probation revocation proceedings are not a part of a criminal prosecution, and the trial court has broad discretion in determining whether the probationer has violated probation.' [Citation.] [¶] . . . [A]nd great deference is accorded the trial court's decision, bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court. [Citations.]' " (*Urke*, *supra*, 197 Cal.App.4th at pp. 772−773.)

The discretion to revoke probation is analogous to a court's power to grant probation, and should not be disturbed absent abuse or some form of arbitrary action. (*Urke*, *supra*, 197 Cal.App.4th at p. 773.) We therefore review the trial court's decision to revoke probation for an abuse of discretion. (*People v. Butcher* (2016) 247 Cal.App.4th 310, 318.) However, the trial court's factual findings will be reviewed for substantial evidence, and we will not reweigh conflicting evidence or determine credibility on appeal. (*Ibid*.; see *People v. Whisenhunt* (2008) 44 Cal.4th 174, 200.)

Magallanes testified defendant had been informed when he was released from jail in October 2020, to report to his probation officer on November 3, 2020. Defendant then failed to meet with Magallanes on November 3. Magallanes also had no record showing defendant attempted to reach her by phone on or around November 3. Magallanes later

testified that this was not the first time defendant failed to appear for an appointment on a designated day.**4**

In his own testimony, defendant admitted missing the November 3, 2020 appointment. Defendant claims he was arrested, but provided no details about that arrest. Defendant then testified he tried to call his probation officer, but that no one picked up the phone. Later in his testimony, defendant acknowledged his attempt to reach his probation officer was not until two to three days after his missed appointment.

Defendant's primary contention is that his failure to appear for the appointment was not "willful" and cannot support the revocation of his probation. Defendant relies heavily on the opinion in *Galvan* to make this point. This reliance on *Galvan* is misplaced, however. In *Galvan*, the appellant failed to appear for an appointment with his probation officer because he had been arrested and deported to Mexico. (*People v. Galvan*, *supra*, 155 Cal.App.4th at p. 981.) The court concluded this failure to report was not willful. (*Id.* at p. 985.)

Defendant's reliance on this court's decision in *People v. Zaring* (1992) 8 Cal.App.4th 362, is also misplaced. In *Zaring*, the defendant was 22 minutes late to court due to an unforeseen problem with childcare. (*Id.* at p. 379.) The trial court revoked probation. (*Ibid.*) This court held the failure to report was not "the result of irresponsibility, contumacious behavior or disrespect for the orders and expectations of the court," nor was it a willful violation of the relevant condition of probation. (*Ibid.*)

In an effort to analogize his facts to those stated in *Galvan* and *Zaring*, defendant points to his testimony that he was arrested. Defendant specifically testified:

---

**4** In September 2020, defendant faced the risk of losing probation when he failed to report for a meeting with probation. Instead, the trial court ordered defendant to serve 120 days in jail, then reinstated probation.

7.

> "I got arrested. Like, I knew I missed the appointment. I was going to call them back. But it was just only two days in between, like a couple of days, and this incident happened."

This was the only mention of an arrest in the record. No document was placed into evidence memorializing the arrest, and no further testimony was provided. As a result, the trial court may have been skeptical about the authenticity of this claim.

The burden of demonstrating a trial court abused its discretion rests squarely on the defendant. (*Urke*, *supra*, 197 Cal.App.4th at p. 773.) An appellate court should interfere with a trial court's exercise of discretion on denying or revoking probation only in extreme cases. (*Ibid.*) " 'Many . . . circumstances not warranting a conviction may fully justify a court in revoking probation granted on a prior offense.' " (*Ibid.*)

We conclude the trial court's finding that defendant willfully violated a condition of probation when he failed to appear for his November 3, 2020 appointment with his probation officer, is supported by substantial evidence. We, therefore, find no abuse of discretion.

## II.     The Impact of Senate Bill No. 567 on The Selection of The Upper Term

At the time defendant was sentenced, section 1170 provided the choice between the lower, middle, and upper term "shall rest within the sound discretion of the court," who determines which term "best serves the interests of justice." (§ 1170, former subd. (b).) On January 1, 2022, amendments to section 1170 made by Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill No. 567) went into effect. Defendant contends his sentence is invalid following these amendments. We conclude that the factual findings underlying defendant's sentence are not consistent with the requirements of section 1170, subdivision (b) as amended, but the error[5] was harmless.

---

[5] Throughout our discussion, we refer to section 1170, subdivision (b) "error." However, we note that at the time the trial court sentenced defendant, it correctly applied the then-existing law. Accordingly, while we refer to section 1170, subdivision (b)

8.

Under the newly amended law, the trial court may impose an upper-term sentence only where there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying all the aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or by the judge in a court trial. (§ 1170, subd. (b)(1), (2).) However, an exception is available, allowing a trial judge to rely on certified records of a defendant's prior convictions to prove a defendant's prior convictions without submitting the issue to a jury. (§ 1170, subd. (b)(3).)

When imposing the sentence after revoking probation, the trial court chose the upper term for the violation of section 451, subdivision (d) in case No. MCR060145, stating:

> "The Court selected the aggravated term based on the facts that [1]
> [defendant's] prior convictions as an adult are numerous and increasing in
> seriousness.[6] [2] He was on probation at the time that he committed the

---

"error," we are mindful that the trial court complied with the applicable law at the time of sentencing.

[6] It is not entirely clear which convictions the trial court was relying on in finding the prior convictions to be numerous or of increasing seriousness. The probation officer's pre-plea report recommended the trial court find defendant's prior convictions numerous and of increasing seriousness based *only* on his three misdemeanor Vehicle Code convictions between 2016 and 2018: driving with a blood-alcohol percentage of 0.08 or higher, driving without a license, and reckless driving.

Defendant's other convictions, identified in post-plea probation reports, included misdemeanor vandalism, which occurred prior to the charges at issue in this matter but for which defendant was not convicted until after the convictions in this matter, and the arson conviction in count 1 of case No. MCR060145. Regardless of whether the convictions identified in the post-plea probation report were properly considered "prior convictions" for purposes of California Rules of Court, rule 4.421(b)(2), the three misdemeanor Vehicle Code convictions were numerous for purposes of that rule (*People v. Searle* (1989) 213 Cal.App.3d 1091, 1098 [three Vehicle Code convictions were sufficient to be considered "numerous" for purposes of an aggravating circumstance]), and a defendant's conduct after commission of the offense for which he is sentenced is

9.

offense.  [3]  His performance on probation prior to the conviction was unsatisfactory, and [4] his performance on probation following the conviction was likewise unsatisfactory."

The trial court also considered defendant's "mental health issues as a factor [in] mitigation, but even in considering that as a factor in mitigation, the Court f[ound] that the aggravating factors justif[ied] an imposition of the aggravated term."

None of the aggravating circumstances were proved to a jury or admitted in full by defendant.  As to the first aggravating circumstance, the People argue that the court was permitted to rely on "prior convictions to impose an aggravated term" without submitting the question to a jury.  However, the People ignore a significant part of the exception provided by section 1170, subdivision (b)(3).  Namely, the record does not reflect that the trial court was relying on a "certified record of conviction" to find true defendant's prior convictions.  (§ 1170, subd. (b)(3).)  Indeed, the record does not reflect that a certified record of conviction was ever admitted into evidence.  The record before us does not demonstrate that requirements of section 1170, subdivision (b)(3) were met.  As to the fourth circumstance, that defendant violated probation, defendant admitted he violated probation in both cases (MCR060145 & MCR060560) after his convictions on April 22, 2019.  A second violation of probation was proved to the trial court in a violation of probation proceeding—specifically, that defendant failed to report to the probation officer as directed—however, the fact was not proved beyond a reasonable doubt as required.  (§ 1170, subd. (b)(2).)  As noted above, a violation of probation must only be proved by a preponderance of the evidence.  (*People v. Rodriguez*, *supra*, 51 Cal.3d at p. 447.)  Therefore, the facts underlying that conviction were not fully proved as required by section 1170, subdivision (b).

---

appropriately considered as an aggravating factor at sentencing (*People v. Gonzales* (1989) 208 Cal.App.3d 1170, 1171–1172).

In sum, none of the aggravating circumstances were established as required by section 1170, subdivision (b). Unless that error was harmless, we must vacate defendant's sentence and remand the matter for resentencing.

This court recently articulated a standard for harmless error in the Senate Bill No. 567 context in *People v. Dunn* (2022) 81 Cal.App.5th 394 (*Dunn*):

> "The reviewing court determines (1)(a) beyond a reasonable doubt whether the jury would have found one aggravating circumstance true beyond a reasonable doubt[7] and (1)(b) whether there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a reasonable doubt. If all aggravating circumstances relied upon by the trial court would have been proved to the respective standards, any error was harmless. If not, the reviewing court moves to the second step of *Lopez*, (2) whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps. If the answer is no, the error was harmless. If the answer is yes, the reviewing court vacates the sentence and remands for resentencing consistent with section 1170, subdivision (b)." (*Dunn*, *supra*, 81 Cal.App.5th at pp. 409-410.)

We agree that *Dunn* articulates the appropriate standard. With that standard in mind, we turn to the aggravating circumstances relied upon by the trial court. As to the first aggravating factor, the probation officer's reports indicate that defendant suffered prior convictions as follows: in 2016, a misdemeanor conviction for reckless driving (Veh. Code, § 23103.5); in 2017, a misdemeanor conviction for driving without a license (Veh. Code, § 12500, subd. (a)); and in 2018, a misdemeanor conviction for driving with a blood-alcohol percentage of 0.08 or higher (Veh. Code, § 23152, subd. (b)). The

---

**7** "Alternatively, this step is satisfied if the trial court relied upon an aggravating circumstance that relied only upon the fact of defendant's prior convictions and a certified record of defendant's convictions was admitted, or defendant admitted the facts underlying an aggravating circumstance. [¶] . . . [S]tep (1)(a) or one of its two alternatives must be satisfied to avoid offending the Sixth Amendment . . . . If not, the error is not harmless; the sentence must be vacated and the matter remanded to the trial court for resentencing consistent with section 1170, subdivision (b)."

11.

probation officer listed the databases and defendant's identification numbers within each which served as sources of information for defendant's prior convictions.[8] Defendant did not dispute the truth of his prior convictions at sentencing and the statement of factors in mitigation submitted by his defense counsel, he acknowledged that "[t]he majority of [defendant's] criminal history is before this [c]ourt. He has been placed on probation three different times for different types of charges." That statement in mitigation was filed after the probation officer identified the above prior convictions. There is no logical reason that defendant would not have challenged the accuracy of his prior convictions if not true. Those convictions were sufficient to support the trial court's finding that defendant's prior convictions were numerous. (*People v. Searle*, *supra*, 213 Cal.App.3d at p. 1098.) We conclude beyond a reasonable doubt that a jury would have found true beyond a reasonable doubt that defendant's prior convictions were numerous.

As to the second aggravating circumstance, that defendant was on probation at the time he committed the offenses at issue in this matter, there appears to have been no dispute. At sentencing, the parties discussed the terms and conditions of defendant's probation, the time remaining on defendant's terms of probation if reinstated, that defendant was recently found in violation of his probation, and that defendant sought to be reinstated on probation. Moreover, the court's own records reflected the dates defendant was granted probation on his prior convictions. We therefore conclude there is no reasonable probability a jury would not have found true beyond a reasonable doubt that defendant was on probation when he committed the offenses at issue in this matter.

---

[8] Specifically, the probation officer provided defendant's "CII" number (relating to the state Department of Justice's Criminal Identification Index database), his "FBI" number (relating to the Federal Bureau of Investigation's Criminal Justice Information Services database), his "CDL" number (his California driver's license number used to search the state Department of Motor Vehicles' database), and his "MDOC" number (his Madera County Department of Corrections identification number).

As to the third circumstance in aggravation, that defendant's prior performance on probation prior to the convictions at issue was unsatisfactory, the probation report again provides a strong basis for the finding. As to defendant's performance on probation prior to the convictions at issue in this matter, defendant was granted a 36-month term of misdemeanor probation in September 21, 2016, which he necessarily violated by driving without a license in 2017. He also was granted a three-year term of bench probation on August 11, 2017, on his driving-without-a-license conviction. Six days later, he necessarily violated that probation when he committed the arson offense he was convicted of in case No. MCR060145.[9] Defendant was also granted a four-year term of probation on March 7, 2018, on his driving-with-a-blood-alcohol-percentage-of-0.08-or-higher conviction, which he necessarily violated by committing the September 23, 2018 criminal threats offense in MCR060560. Additionally, defendant admitted a violation of probation in the 2017 driving-without-a-license case on April 22, 2019. Again, there is no logical reason defendant would not have challenged his record of convictions and grants of probation if they had not been true. Because each violation of probation was based on commission of a new offense of which defendant was convicted and because defendant admitted one violation of probation, we conclude there is no reasonable probability a jury would not have found true beyond a reasonable doubt that defendant's prior performance on probation was unsatisfactory. Defendant completed no grant of probation without committing a new offense.

Finally, as to the fourth circumstance in aggravation, that defendant's performance on probation after the April 22, 2019 convictions at issue in this matter, was unsatisfactory, the record provides some support that a jury would have found the circumstance true beyond a reasonable doubt. As noted above, defendant admitted one

---

[9] The criminal complaint alleged that the arson offense occurred on or about August 17, 2018. In either event, the offense constituted a violation of the three-year term of probation granted on August 11, 2017.

13.

violation of probation and a second was proved to the trial court by a preponderance of the evidence. As to the second violation of probation, defendant testified that he was unable to report as required because he was arrested. No additional evidence was provided regarding the purported arrest. He also testified that he attempted to call his probation officer two or three days after the date he was required to report but was unable to make contact. Defendant's probation officer testified that defendant had previously failed to keep some prior appointments. She also testified that defendant had previously reached him by telephone. On this record, we cannot conclude that there is no reasonable probability a jury would have found not true that defendant had violated probation a second time.

We have concluded that a jury would have found true beyond a reasonable doubt the first three aggravating circumstances and that defendant admitted some, but not all, facts underlying the fourth aggravating circumstance. Defendant's admission that he violated probation on the offenses at issue in this matter (on the more serious of the two violations of probation—the former violation of probation was commission of a new offense; the latter was failing to report) was sufficient for the trial court to conclude that defendant's performance on probation in this matter was unsatisfactory even without the second violation of probation. Because the jury would have found true three of the four aggravating circumstances, the facts underlying the fourth aggravating circumstance that were admitted were sufficient to support the aggravating circumstance, and only one mitigating circumstance—defendant's "mental health issues"—was present, we conclude there is no reasonable probability the trial court would have imposed a more favorable sentence than the upper term. Indeed, in sentencing defendant based on the four aggravating circumstances originally found true, the trial court found "that the aggravating factors justif[ied] an imposition of the aggravated term." The error was therefore harmless and remand for resentencing is unnecessary.

14.

## **DISPOSITION**

The trial court is directed to issue an amended abstract of judgment reflecting the consecutive one-third middle term sentence on count 1 of case No. MCR060560 and no sentence on count 2 of the same, and transmit copies thereof to the appropriate entities. Defendant's sentence is affirmed.


                                                     DETJEN, J.

I CONCUR:


POOCHIGIAN, Acting P. J.

MEEHAN, J., Concurring and Dissenting.

**I.     Introduction and Summary**

I concur in the majority's affirmance of the trial court's revocation of probation in part I. of the Discussion.  In part II. of the Discussion, the majority applies *People v. Dunn* (2022) 81 Cal.App.5th 394 (opn. mod. and ordered pub. July 20, 2022) (*Dunn*) and its invocation of a harmless error analysis to conclude defendant is not entitled to resentencing under Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567 or Sen. Bill 567).  I respectfully decline to join in the majority's reasoning and conclusions in this regard.

Defendant was sentenced to an upper term under former section 1170 of the Penal Code.[1]  The former version of the statute permitted the sentencing court broad discretion to select the appropriate term of imprisonment articulated for the crime committed among three permissible options:  low, middle, or upper.  The sentencing court was allowed to find and weigh aggravating and mitigating circumstances and, based on the circumstances, was free to select any one of the terms it believed best served the interests of justice.

Senate Bill 567 significantly altered this sentencing scheme and the new law limits a trial court's discretion to impose an upper term:  "the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term .…"  (§ 1170, subd. (b)(1).)  Presumptively, the middle term is now the maximum term that may be imposed and it may be exceeded "only when there are circumstances in aggravation of the crime that justify imposition of a term of imprisonment exceeding the middle term .…"  (*Id.*, subd. (b)(2).)  In addition, the facts underlying those circumstances must be proven, admitted or evidenced in a specific manner not required under the former law.  (*Ibid.*)

---

[1]     Further statutory references are to the Penal Code unless otherwise stated.

Presumptions affecting the trial court's sentencing discretion that are enacted in new legislation or by judicial precedent have been recognized as key ameliorative changes in the law, including those implemented by Senate Bill 567. Further, the Courts of Appeal have uniformly agreed the Legislature intended Senate Bill 567 to be applied retroactively. In this situation, similar to other ameliorative and retroactively applied law that affects a court's sentencing discretion, the standard articulated by the California Supreme Court in *People v. Gutierrez* (2014) 58 Cal.4th 1358, 1382 (*Gutierrez*) governs and ultimately requires resentencing unless the record clearly indicates the trial court would have imposed the upper term had it known of the new presumptive middle term.

In *Gutierrez*, the Supreme Court considered a retroactive change in the trial court's sentencing discretion based on a presumption that mirrors the one at issue here. The *Gutierrez* court interpreted section 190.5, subdivision (b) (section 190.5(b) or § 190.5(b)), which provided that the penalty for 16- to 17-year-old juveniles convicted of special-circumstance murder shall be life without the possibility of parole (LWOP) or 25 years to life at the court's discretion. At that time, appellate and trial courts had long construed this provision as establishing LWOP as the presumptive term. The Supreme Court held that section 190.5(b) contained no such presumption and explained that, "Although the trial courts in these cases understood they had some discretion in sentencing, the records do not clearly indicate that they would have imposed the same sentence had they been aware of the full scope of their discretion. Because the trial courts operated under a governing presumption in favor of [LWOP], we cannot say with confidence what sentence they would have imposed absent the presumption." (*Gutierrez, supra*, 58 Cal.4th at p. 1391.)

The *Gutierrez c*ourt observed that courts previously supporting the LWOP presumption believed the statute expressed a preference for LWOP as the "'generally mandatory'" punishment and that "'*the court's discretion is concomitantly circumscribed to that extent*.'" (*Gutierrez, supra*, 58 Cal.4th at p. 1370, italics added, quoting *People v.*

2.

*Guinn* (1994) 28 Cal.App.4th 1130, 1142.)  In *Gutierrez*, the change in the law retroactively expanded the trial court's sentencing discretion by eliminating a presumption in favor of LWOP.  Here, the change in the law retroactively restricts the sentencing court's discretion by adding an express presumption in favor of a sentence not exceeding the middle term.  Directly pertinent here, the high court reasoned "it is one thing to say that a court, confronting [three] permissible sentencing options, may impose the harsher sentence if it finds that sentence justified by the circumstances.  It is quite another to say that a court, bound by a presumption [not to exceed the middle term], must impose that sentence unless it finds good reason not to do so." (*Gutierrez, supra*, at p. 1382.)

The trial court in this case made its sentencing decision in the absence of the new presumption against exceeding the middle term, and the record does not clearly indicate that the court would have imposed the upper term had it been aware of the new constraint on its discretion.  I believe *Gutierrez* is binding and the appropriate remedy is to remand for the sentencing court to exercise its newly informed and circumscribed discretion in the first instance.

The majority's departure from the Supreme Court's clear indication test appears to be predicated upon the proposition that Senate Bill 567 did not change the trial court's sentencing discretion and only changed the manner in which aggravating circumstances must be proved.  This approach necessarily is based on what I believe is an unreasonable interpretation of the amended version of section 1170, subdivision (b) (section 1170(b) or § 1170(b)), as Senate Bill 567 amended the statute in more than one way.  In subdivision (b)(1), the Legislature established a clear and express new preference in sentencing of the type the Supreme Court has explained affects the trial court's discretion that did not exist in the prior version.  If the Legislature did not intend to alter the sentencing court's discretion in this manner, it simply could have left intact the language articulating the prior standard.  Contrary to the rules of statutory interpretation, the

majority gives no effect to the not-to-exceed language and the change in sentencing discretion it manifests. Rather, they bypass subdivision (b)(1) and give effect only to how the facts underlying aggravating circumstances must be proved, admitted or evidenced under subdivision (b)(2) and (b)(3). The fact is, in the context of upper term sentences, no court embracing a harmless error analysis to preclude resentencing under Senate Bill 567 acknowledges the extent of the changes in the law, meaningfully addresses *Gutierrez*, or explains their departure from *Gutierrez*'s governing standard.

I agree that a harmless error analysis may be applied to test an original upper term sentence for legal viability under the Sixth Amendment and the new law as it relates to how facts underlying the aggravating circumstances are determined. If, in imposing an upper term, the trial court relied on aggravating circumstances not admitted or proved as Sixth Amendment principles and the amended statute require, reversal may not be necessary if one or all of the circumstances are deemed harmlessly considered under a prejudicial error analysis.

This analysis, however, is only probative of whether the sentence is invalid and remand is mandated, not whether resentencing is precluded. In the event that none of the aggravating circumstances are supported by facts properly or harmlessly found, an upper term is not even legally viable under the new law and remand is required without the necessity of further inquiry. On the other hand, if any or all of the aggravating circumstances were properly or harmlessly considered, then the upper term *could* be imposed if the statute's other provisions are satisfied. But applying a harmless error test for this purpose, in my view, cannot resolve whether the trial court *would*, with the benefit of the new presumption against exceeding the middle term, exercise its newly circumscribed discretion and nonetheless impose the upper term.

To answer the latter question of what the trial court *would* do, my colleagues here and in *Dunn*, along with other courts, apply a second harmless error analysis to gauge the likelihood of what sentence the trial court would impose on resentencing based on their

4.

calculation of reasonable probabilities. How a trial court would balance the circumstances under a new standard of discretion in the first instance, however, should not be a matter of estimating the odds. I agree a second inquiry is necessary, but I would apply *Gutierrez* and ascertain whether the record clearly indicates that the trial court would make the same sentencing decision notwithstanding the new constraint on its discretion. The clear indication test requires more than a showing that the trial court's original imposition of the upper term simply is supported by one or more of the aggravating circumstances properly or harmlessly considered. It requires a new evaluation and weighing of the circumstances by the sentencing court that starts with the awareness that the new statutory preference bears on its discretion. To do otherwise is to conflate this starting preference with the necessary procedural requirements for finding aggravating circumstances that justify overcoming it.

A harmless error approach to determine how the trial court would exercise its newly informed discretion unnecessarily injects a layer of speculation into the inquiry that is out of step with *Gutierrez* and effectively places the sentencing decision in the hands of the appellate court. Importantly, it deprives the defendant of a fair opportunity to obtain all of the ameliorative benefits of the new law, and precludes the defendant from a sentencing determination made in the exercise of informed discretion. In sum, while a harmless error test may be utilized to test an upper term sentence for legal viability as a threshold inquiry, *Gutierrez* guides any subsequent analysis determinative of resentencing. When I apply that framework here, defendant is clearly entitled to resentencing. Therefore, I respectfully dissent from the majority's reasoning and conclusion in part II. of the Discussion.

## II. Applicable Legal Background and Principles

Prior to January 1, 2022, former section 1170(b) provided that "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court…. The

5.

court shall select the term which, in the court's discretion, best serves the interests of justice.…"

Senate Bill 567 amended section 1170(b), and it now provides that "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (*Id.*, (b)(1).) "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial…." (*Id.*, (b)(2).)

The genesis of the harmless error analysis to measure the need for resentencing upon retroactive application of Senate Bill 567 appears rooted in how the Sixth Amendment is implicated by section 1170(b)(1)'s prohibition on exceeding the middle term and the new state law requirements for proving aggravating circumstances. In general terms, former section 1170(b) did not restrict a trial court's discretion to impose an upper term, so a Sixth Amendment jury trial right did not attach to the aggravating-circumstance findings used to support an upper term; the trial court was free to make these findings itself without a jury.

In retroactively restricting a court's discretion to impose the upper term under the new law, a jury trial right *retroactively attaches* to the aggravating-circumstance findings made to support that upper term under the former law.[2] The new procedural requirements in section 1170(b)(2) (which address this Sixth Amendment issue) *also retroactively attach* to the original sentencing decision. The resulting question is whether

---

[2]    As I indicate, *post*, a Sixth Amendment jury trial right does not attach to the fact of a prior conviction or facts the defendant has admitted.

6.

aggravating-circumstance findings made by the court without a jury survive constitutional and state law scrutiny. The focus of the harmless error analyses deployed to consider retroactive application of Senate Bill 567 revolve exclusively around this question, *but none accounts for how retroactively limiting the sentencing court's discretion also precludes the original sentencing decision from being a fully informed one*.

Accordingly, to explicate my position in full context, I begin my analysis with the Sixth Amendment and its relevance to Senate Bill 567 and section 1170(b).

### A.     Sixth Amendment Implications

#### 1.     Sixth Amendment and California's Determinate Sentencing Law (DSL)

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*).) As such, "the Federal Constitution's [Sixth Amendment] jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." (*Cunningham v. California* (2007) 549 U.S. 270, 274–275 (*Cunningham*).) "[T]he relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." (*Blakely v. Washington* (2004) 542 U.S. 296, 303–304 (*Blakely*).)

California's DSL in effect from 1977 to 2007 assigned to the trial judge, not a jury, the authority to find facts that exposed a defendant to an elevated "upper term" sentence. The pre-2007 version of section 1170(b), provided that "the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime." (Stats. 1976, ch. 1139, § 273, pp. 5140–5141, as amended by Stats. 1977, ch. 165, § 15, pp. 647–649.) The circumstances in aggravation or mitigation

7.

were to be determined by the court after consideration of the trial record; the probation officer's report; statements in aggravation or mitigation submitted by the parties, the victim, or the victim's family; and any further evidence introduced at the sentencing hearing. (Stats 1976, ch. 1139, § 273, pp. 5140–5141; see *Cunningham, supra*, 549 U.S. at p. 277, citing § 1170, former subd. (b).) The California Rules of Court provided that "[c]ircumstances in aggravation" were to be "established by a preponderance of the evidence." (Cal. Rules of Court, former rule 4.420(b).)

In 2007, the United States Supreme Court held this sentencing scheme violated the Sixth Amendment's jury-trial guarantee as articulated in *Apprendi* and *Blakely* because it allowed a sentencing judge to impose a term beyond the statutory maximum based on facts not proven to a jury beyond a reasonable doubt or admitted by the defendant. (*Cunningham, supra*, 549 U.S. at p. 293.) The high court explained "California's DSL, and the Rules governing its application, direct the sentencing court to start with the middle term, and to move from that term only when the court itself finds and places on the record facts—whether related to the offense or the offender—beyond the elements of the charged offense." (*Id.* at p. 279.) Applying *Apprendi* and *Blakely*, the court concluded the middle term under California's DSL was the relevant statutory maximum. (*Cunningham, supra*, at p. 288.) To the extent the DSL allowed a sentencing judge to find facts necessary to impose a punishment exceeding the middle term that were neither established by the jury's verdict, the defendant's admissions, or the defendant's prior convictions, the system did not "withstand measurement against [the court's] Sixth Amendment precedent." (*Cunningham, supra*, at p. 293.)

Applying *Cunningham* in *People v. Black* (2007) 41 Cal.4th 799 (*Black II*), the California Supreme Court addressed whether the imposition of the upper term in the circumstances of Black's case violated the Sixth Amendment. Black argued he had a right to a jury trial on all aggravating circumstances that may be considered by the sentencing court in imposing the upper term, even if one aggravating circumstance was

established in accordance with *Blakely*. (*Black II, supra*, at p. 814.) This was so, Black argued, because selection of the upper term was justified only when the circumstances in aggravation outweigh the circumstances in mitigation—thus, a court could not impose the upper term unless it determined that any aggravating circumstances were of sufficient weight to justify the upper term. (*Ibid.*) Accordingly, Black asserted, "if only one of several aggravating circumstances considered by the trial court has been established pursuant to Sixth Amendment requirements, and the upper term sentence is selected, the court has imposed 'punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," [citation] and the judge exceeds his proper authority.'" (*Black II, supra*, at p. 814, quoting *Blakely, supra*, 542 U.S. at p. 304.)

Our high court rejected this argument. The court observed that "under the line of high court decisions beginning with *Apprendi*, …, and culminating in *Cunningham*, …, the constitutional requirement of a jury trial and proof beyond a reasonable doubt applies only to a fact that is 'legally essential to the punishment' (*Blakely, supra*, 542 U.S. at p. 313), that is, to 'any fact that exposes a defendant to a greater potential sentence' than is authorized by the jury's verdict alone (*Cunningham, supra*, 549 U.S. at p. [281])." (*Black II, supra*, 41 Cal.4th at p. 812.) "'The Sixth Amendment question, the Court has said, is whether the law *forbids* a judge to increase [the] defendant's sentence *unless* the judge finds facts that the jury did not find (and the offender did not concede).' (*Rita v. United States* (2007) 551 U.S. [338, 352].)" (*Ibid.*)

Under California's pre-2007 determinate sentencing scheme, the sentencing court was required to order imposition of the middle term unless there were circumstances in aggravation or mitigation of the crime. (*Black II, supra*, 41 Cal.4th at p. 808, citing § 1170, former subd. (b).) Under this framework, the court pointed out, the presence of one aggravating circumstance made it lawful for the trial court to impose an upper term sentence. (*Black II, supra*, at p. 813.) So long as one aggravating circumstance was

9.

established in accordance with the constitutional requirements, the defendant was no longer entitled to the middle term, and the upper term became the statutory maximum for Sixth Amendment purposes. (*Black II, supra*, at p. 813.) The court explained further that a sentencing court's "factual findings regarding the existence of additional aggravating circumstances may increase the likelihood that it actually will impose the upper term sentence, but these findings do not themselves further raise the authorized sentence beyond the upper term. No matter how many additional aggravating facts are found by the court, the upper term remains the maximum that may be imposed. Accordingly, judicial factfinding on those additional aggravating circumstances is not unconstitutional." (*Id.* at p. 815.)

Based on this, the *Black II* court held "as long as a single aggravating circumstance that renders a defendant *eligible* for the upper term sentence has been established in accordance with the requirements of *Apprendi* and its progeny, any additional factfinding engaged in by the trial court in selecting the appropriate sentence among the three available options does not violate the defendant's right to jury trial." (*Black II, supra*, 41 Cal.4th at p. 812.)

Applying this reasoning to the facts before it, our high court noted one of the aggravating facts the trial court relied on to impose the upper term sentence was that force was used against the victim to commit the underlying crime, a fact that was necessarily presented to the jury in the form of a special allegation.[3] This aggravating circumstance, the court reasoned, rendered Black *eligible* for the upper term under section 1170. (*Black II, supra,* 41 Cal.4th at p. 817.) Beyond that, the trial court had relied on Black's numerous prior convictions as an aggravating circumstance, which the

---

[3]  The jury had found true the allegation that Black had committed the offense by means of "'force, violence, duress, menace, and fear of immediate and unlawful bodily injury'" within the meaning of section 1203.066, subdivision (a)(1), which rendered Black ineligible for probation. (*Black II, supra*, 41 Cal.4th at pp. 816–817.)

court held came within the prior conviction exception to which no jury trial right applied. (*Id.* at pp. 818–820.) As Black was eligible for the upper term sentence based on at least one aggravating circumstance found in compliance with the Sixth Amendment and the prior conviction exception thereto, the court concluded his right to a jury trial was not violated by imposition of the upper term sentence. (*Black II, supra*, at p. 820.)

### 2. The Harmless Error Test for Sixth Amendment Violations in Sentencing under the DSL

On the same day it decided *Black II*, our high court issued its opinion in *People v. Sandoval* (2007) 41 Cal.4th 825 (*Sandoval*), which also presented a question of whether the imposition of an upper term sentence under the pre-2007 DSL violated the defendant's Sixth Amendment rights. Different from *Black II*, none of the aggravating circumstances found by the trial court for imposing the upper term satisfied the Sixth Amendment under *Apprendi, Blakely* or *Cunningham*; all were based on the facts underlying the crime, none of which had been admitted by the defendant, established by the jury's verdict, or involved a prior conviction. (*Sandoval, supra*, at pp. 837–838.) The court concluded the upper term sentence violated the Sixth Amendment, but then proceeded to determine whether that error was harmless. (*Id.* at pp. 838–843.)

The court explained the denial of a Sixth Amendment jury trial right was reviewed under the harmless error standard set forth in *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). (*Sandoval, supra*, 41 Cal.4th at p. 838.) However, the relevant question regarding the failure to submit a sentencing factor to a jury was not whether the error contributed to the verdict; rather, the question was whether the jury's verdict would have authorized the upper term sentence had the aggravating circumstance been submitted to the jury. (*Ibid.*) Reiterating its reasoning in *Black II* that only one aggravating circumstance renders a defendant eligible for an upper term sentence and tailoring the *Chapman* error standard to the context, *Sandoval* held that "[i]f a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-

11.

doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury," the error is harmless. (*Sandoval, supra*, at p. 839.)

### 3. Retroactive Application of Senate Bill 567 Implicates the Sixth Amendment

Meanwhile, in response to *Cunningham*, California's Legislature amended the DSL through urgency legislation effective March 30, 2007. (Stats. 2007, ch. 3, § 2.) The amended DSL did away with a presumptive middle term and left "the choice of the appropriate term" to the "sound discretion of the court." (Stats. 2007, ch. 3, § 2.) The jury's verdict alone was sufficient to render a defendant eligible for an upper term sentence, making the upper term the relevant statutory maximum for purposes of the Sixth Amendment, remedying the DSL's constitutional infirmity. (See generally *Apprendi, supra*, 530 U.S. at p. 481 [observing nothing in the common law history pertaining to jury trial right in criminal cases "suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute"].)

Under the changes effected by Senate Bill 567, a trial court imposing a sentence may no longer select any of the three terms that best serves the interests of justice, but must impose a sentence that does not exceed the middle term, except as provided in section 1170 (b)(2). As elements of the offense being punished may not be used to impose an upper term (Cal. Rules of Court, rule 4.420(h)), a defendant is not eligible for an upper term sentence based solely on a conviction on the substantive offense—only the presence of an additional aggravating circumstance proved, admitted or evidenced in conformity with all the requirements of section 1170(b)(2) and (b)(3) will render a defendant eligible for an upper term.

Senate Bill 567 addressed the potential Sixth Amendment issue regarding upper term sentences by requiring aggravating circumstances be found, admitted or evidenced

in conformity with Sixth Amendment principles.  But when Senate Bill 567 is applied *retroactively* to sentencings occurring under section 1170, former subdivision (b), the issue is whether the aggravating circumstances found by the sentencing judge and relied on to impose the upper term now comply with the Sixth Amendment and the new state law.[4]

### B.  Courts Applying a Harmless Error Analysis to Assess the Need for Resentencing on Retroactive Application of Senate Bill 567

Apparently to address this potential issue, the Court of Appeal in *Flores* extended the harmless error test applied in *Sandoval* to assess whether an upper term sentence imposed under the former DSL required resentencing upon retroactive application of the new law.  (*Flores, supra*, 75 Cal.App.5th at p. 500.)  There, to impose the upper term under section 1170, former subdivision (b), the sentencing court relied on aggravating circumstances that included the defendant's numerous prior convictions and sustained juvenile delinquency petitions, and the defendant's unsatisfactory performance while on probation—he was on probation when he committed his current offenses.  (*Flores, supra*, at p. 500.)  To the extent these aggravating circumstances were not stipulated or found true by a jury beyond a reasonable doubt, the court applied *Sandoval* and concluded that, "beyond a reasonable doubt, the jury would have found true at least one aggravating circumstance."  (*Flores, supra*, at p. 521.)  The court summarily concluded remand for resentencing under the new law was unnecessary.

The appellate court in *Lopez* disagreed with *Flores* that *Sandoval* was dispositive

---

[4]      The Courts of Appeal have uniformly concluded Senate Bill 567 is an ameliorative change in the law that applies retroactively.  (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039; accord, *People v. Flores* (2022) 75 Cal.App.5th 495, 500–501 (*Flores*); *People v. Lopez* (2022) 78 Cal.App.5th 459, 465 (*Lopez*); *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1109 (*Zabelle*); *Dunn, supra*, 81 Cal.App.5th at p. 403; see *People v. Wandrey* (2022) 80 Cal.App.5th 962, 981 (*Wandrey*) [accepting parties' concession Sen. Bill 567 is ameliorative and applies retroactively]; see also *People v. Salazar* (2022) 80 Cal.App.5th 453, 462 [same].)

13.

as to resentencing in the context of Senate Bill 567, and fashioned a different harmless error analysis: "The question of prejudice under retroactive application of the revised triad system involves a two-step process, neither of which includes a determination as to whether the trial court relied on a single, or even a few, permissible factors in selecting an upper term. Rather, under the new version of the triad system set forth in section 1170, the initial relevant question for purposes of determining whether prejudice resulted from failure to apply the new version of the sentencing law is whether the reviewing court can conclude beyond reasonable doubt that a jury would have found true beyond a reasonable doubt *all* of the aggravating factors on which the trial court relied in exercising its discretion to select the upper term. If the answer to the question is 'yes,' then the defendant has not suffered prejudice from the court's reliance on factors not found true by a jury in selecting the upper term. However, if the answer to the question is 'no,' we then consider the second question, which is whether a reviewing court can be certain, to the degree required by *People v. Watson* (1956) 46 Cal.2d 818, 836, that the trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors, or none of the aggravating factors, rather than all of the factors on which it previously relied." (*Lopez, supra*, 78 Cal.App.5th at p. 467, fn. 11.)

The trial court in *Lopez* had imposed an upper term sentence for one of the defendant's offenses based on nine aggravating factors that related to the nature of the crimes, how they were committed, and the danger to society the defendant posed; numerous prior convictions increasing in seriousness; a prior prison term served; and unsatisfactory performance on probation, mandatory supervision and postrelease community supervision or parole. (*Lopez, supra*, 78 Cal.App.5th at p. 464, fn. 8.) Most of these factors were not found true beyond a reasonable doubt by a jury, nor were they admitted by the defendant.

14.

On appeal, the court concluded that upon retroactive application of Senate Bill 567, the improper consideration of aggravating circumstances could not be deemed harmless unless it could be determined beyond a reasonable doubt that a jury would have found true beyond a reasonable doubt *every* aggravating circumstance on which the court relied in imposing the upper term—the adapted *Chapman* harmless error test articulated in *Sandoval* for Sixth Amendment jury-trial right violations.  (*Lopez, supra*, 78 Cal.App.5th at pp. 465–466.)  The court rejected the People's suggestion that resentencing was unnecessary because the trial court had relied on one permissible circumstance.  (*Id*. at pp. 466–467 & fn. 10.)  The court reasoned that while "unquestionably the trial court may still rely on any single permissible aggravating factor to select an upper term sentence under the newly revised triad system" (*id.* at p. 467), state law required all aggravating circumstances to be found true by a jury beyond a reasonable doubt, admitted by the defendant, or constitute a prior conviction (*id.* at p. 466).  From the facts before it, the court found several aggravating circumstances did not pass scrutiny under the adapted *Chapman* harmless error test.  (*Lopez, supra*, at pp. 465–468.)

The court reasoned that when not all aggravating circumstances could be deemed harmlessly considered, a second relevant prejudice question must be addressed:  whether the court *would* have exercised its discretion to impose the upper term on less than all the aggravating circumstances originally relied upon.  (*Lopez, supra*, 78 Cal.App.5th at p. 467.)  Notably applying *Gutierrez*, the court remanded for resentencing under the new law because the record did not clearly indicate the trial court would have exercised its discretion to impose an upper term based solely on a single permissible aggravating circumstance or some constellation of permissible aggravating circumstances less than all it had originally relied upon.  (*Lopez, supra*, at pp. 467–468.)

Somewhat differently in *Wandrey*, the court concluded that, to determine whether resentencing is warranted under the new law, the harmless error test under *Sandoval* did

15.

not encompass the separate variable that Senate Bill 567 posed in "changing the framework within which the trial court exercises its discretion by specifying a legislatively determined presumptive sentence." (*Wandrey, supra*, 80 Cal.App.5th at p. 982.) Thus, instead of relying on *Sandoval* exclusively to determine whether resentencing was necessary, the court cited *Lopez* and applied a slightly modified resentencing test, assessing whether it was "certain the jury would have found beyond a reasonable doubt the aggravating circumstances relied on by the court *and* whether the trial court would have exercised its discretion in the same way if it had been aware of the statutory presumption in favor of the middle term." (*Wandrey, supra*, at p. 982.) Applying this framework, the court remanded for resentencing, reasoning it would require "[s]ome degree of speculation" to conclude the jury would have agreed with the court's evaluation of the aggravating circumstances relied upon or that the trial court would have exercised its sentencing discretion the same way if it had taken the statutory presumption of the middle term into account. (*Id.* at p. 983.)

In *Dunn*, a panel of this court recently adopted *Lopez*'s analysis, but altered it slightly to incorporate a *Watson*[5] harmless error test into the first prong. (*Dunn, supra*, 81 Cal.App.5th at pp. 409–410.) Like *Lopez*, the court in *Dunn* concluded that if all aggravating circumstances relied on by the trial court were permissibly or harmlessly considered, then resentencing is not warranted. (*Dunn, supra*, at p. 410.) However, *Dunn* disagreed with *Lopez*'s conclusion that a *Chapman*-style harmless error test applied to evaluate *all* of the aggravating circumstances in making this determination. (*Dunn, supra*, at pp. 409–410.) The court reasoned that if a single aggravating circumstance is relied on in accordance with Sixth Amendment principles, or was harmlessly relied upon as articulated in *Sandoval*, the upper term sentence is constitutionally viable under the new law. (*Dunn, supra*, at p. 409.)

---

5    *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*).

16.

As such, *Dunn* reasoned, whether any other aggravating circumstances were permissibly considered to impose the upper term implicates an issue of state law only (*Dunn, supra*, 81 Cal.App.5th at pp. 409–410); thus, if additional circumstances were not considered in compliance with the new requirements under section 1170(b)(2) and (b)(3), then *Watson* provides the applicable harmless error test as to those circumstances, rather than the *Chapman*-style harmless error test applied in *Lopez*. (*Dunn, supra*, at pp. 409–410.) If all aggravating circumstances were proven to the respective standards, the court concluded any error is harmless and resentencing is not warranted. (*Dunn, supra*, at p. 410; see *Zabelle, supra*, 80 Cal.App.5th at p. 1112 [articulating same two-part harmless error test and considering aggravating circumstances under *Sandoval* and *Watson* to evaluate need for resentencing under Sen. Bill 567].) If not, *Dunn* explained, a second step is necessary to determine whether, under *Watson*, there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps of the analysis. (*Dunn, supra*, at p. 410.)

In applying this framework, the *Dunn* court concluded from the record before it that two aggravating circumstances relied on by the sentencing court were found in compliance with Sixth Amendment principles and in compliance with the new state law. (*Dunn, supra*, 81 Cal.App.5th at p. 410.) As to one other aggravating circumstance not found in compliance with the new state law, the court applied *Watson* and concluded any error in relying on that circumstance was harmless. (*Dunn, supra*, at pp. 410–411.) As all the aggravating circumstances considered by the sentencing court were either permissibly or harmlessly relied upon, the court held any error in imposing an upper term sentence under the new law was harmless, no analysis at the second step was necessary, and resentencing was not warranted. (*Id.* at p. 411.)

17.

C. **Limited Applicability of Harmless Error Test**

1. **Harmless Error Test Cannot Preclude Resentencing**

Regardless of the variance in the harmless error tests articulated in the cases above, two questions have emerged as the relevant inquiry to determine whether upper term sentences imposed under section 1170, former subdivision (b), require resentencing under section 1170(b) as amended by Senate Bill 567. First, there is a question whether, in light of the aggravating circumstances relied on to originally impose an upper term sentence, the upper term could still be legally imposed under federal and state law. The second relevant question, as articulated in *Lopez*, *Dunn* and *Wandrey*, involves an evaluation of whether a trial court would impose an upper term sentence under the new law.

While I generally agree with this basic framework, no application of the harmless error test can be properly employed to preclude resentencing. The *Flores* court's evaluation of aggravating circumstances under *Sandoval* is relevant to whether resentencing is mandated as a constitutional matter: if, on retroactive application of the new law, improper consideration of aggravating circumstances in imposing an upper term prejudicially violates a defendant's jury trial right under the Sixth Amendment, then resentencing would be required. But the inverse proposition, as *Flores* applied the test, is not truly conclusive of the need for resentencing: an upper term sentence that *passes* muster under a Sixth Amendment harmless error test (*Sandoval*) informs only whether the sentence could be legally imposed under the Sixth Amendment given the aggravating circumstances relied upon.

As I will explain below, this fails to consider whether a trial court would exercise its newly circumscribed discretion under section 1170 to impose an upper term in the first instance. Recognizing this issue, *Wandrey* held that application of the *Sandoval* harmless error test as applied in *Flores* is not necessarily dispositive of the need for resentencing under Senate Bill 567. (*Wandrey, supra*, 80 Cal.App.5th at p. 982 [harmless error test for

18.

6th Amend. does not take into account the changed framework under which the court now exercises its discretion under Sen. Bill 567].)

In this regard, the *Lopez* analysis suffers a shortcoming similar to *Flores*. *Lopez* states that if *all* the aggravating circumstances were properly considered under the new law or harmlessly considered under a *Chapman*-style harmless error test,[6] then the defendant has suffered no prejudice, and the second question is not relevant—i.e., no resentencing is warranted. (*Lopez, supra*, 78 Cal.App.5th at pp. 466–467, fns. 10 & 11.) Although applying a modified harmless error analysis at this first step, *Dunn* too concludes that if all aggravating circumstances were properly or harmlessly considered under federal and state law, then resentencing is unwarranted. Yet, similar to *Flores,* the fact that aggravating circumstances were permissibly or harmlessly considered reveals only that the upper term could be imposed under federal and new state law given the aggravating circumstances considered, not whether a court would still impose an upper term in light of the court's now curtailed sentencing discretion to do so.[7]

These approaches focus exclusively on the new procedural requirements for

---

[6]     *Lopez* relied on the Sixth Amendment harmless error test articulated in *People v. French* (2008) 43 Cal.4th 36, which, in turn, relied on *Sandoval*. (*People v. French, supra*, at p. 53.)

[7]     For this reason, I am skeptical that *Lopez* applied a *Chapman*-style harmless error test to *all* aggravating circumstances not proven, admitted or evidenced because it believed it was a *constitutional* prerequisite to imposing an upper term. For one thing, *Lopez* did not articulate any doubts that *Sandoval* and *Black II*'s application of *Apprendi* (only one aggravating circumstance found in compliance with the 6th Amend., or impermissibly but harmlessly found by the sentencing court, is required to pass constitutional scrutiny) remained viable under the new sentencing framework. But, more importantly, *Lopez* indicated that if all the aggravating circumstances could not pass through the harmless error test (meaning, some were harmfully considered), only then would a second prejudice test be necessary. (*Lopez, supra*, 78 Cal.App.5th at p. 466, fn. 10.) Logically, if all of the aggravating circumstances must pass scrutiny under the Sixth Amendment or the relevant harmless error test, the fact that some of them cannot meet those standards means the sentence is no longer constitutionally sound, and there would be no need to consider the second question because resentencing would be required.

19.

aggravating circumstances, giving no effect or consideration to section 1170(b)(1) or the language employed in section 1170(b)(2). Determining the best method to assess the *effects* of a changed law requires an examination of what actually changed; to do that, we must turn to the statute itself.

### 2. Section 1170(b) Circumscribes Trial Court's Sentencing Discretion

"The proper interpretation of a statute is a question of law we review de novo." (*People v. Lewis* (2021) 11 Cal.5th 952, 961.) In cases involving statutory interpretation, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose, and courts begin by examining the statute's words, giving them a plain and commonsense meaning. (*Ibid.*) "'"[W]e look to 'the entire substance of the statute … in order to determine the scope and purpose of the provision .… [Citation.]' [Citation.] That is, we construe the words in question '"in context, keeping in mind the nature and obvious purpose of the statute .…" [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment … by considering the particular clause or section in the context of the statutory framework as a whole.'"'" (*Ibid.*)

The former version of section 1170(b) provided as follows:

> "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. At least four days prior to the time set for imposition of judgment, either party or the victim, or the family of the victim if the victim is deceased, may submit a statement in aggravation or mitigation. In determining the appropriate term, the court may consider the record in the case, the probation officer's report, other reports, including reports received pursuant to Section 1203.03, and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing. The court shall select the term which, in the court's discretion, best serves the interests of justice. The court shall set forth on the record the reasons for imposing the term selected and the court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law. A term of

20.

imprisonment shall not be specified if imposition of sentence is suspended." (§ 1170, former subd. (b).)

Senate Bill 567 significantly altered this framework. The Legislature amended section 1170(b) and added newly enumerated section 1170(b)(1), which states,

> "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (§ 1170(b)(1).)

Section 1170(b)(1) supplies the court with full discretion to select either the lower or the middle term, but it plainly and expressly commands the court "not to exceed" the middle term—a definite and clear phrase meaning not to surpass. This prohibition is new, and it is a sea change from former section 1170(b), which allowed the court full discretion to select an upper term so long as it best served the interests of justice. This limitation circumscribes the sentencing court's discretion to exceed a middle term in exactly the manner described in *Gutierrez*. (*Gutierrez, supra*, 58 Cal.4th at p. 1382 [a statutory preference in favor of a particular sentence does not eliminate a court's discretion, but it does circumscribe it].) The majority's analysis gives no effect to section 1170(b)(1); rather, it focuses solely on section 1170(b)(2) and the procedural requirements for proving aggravating factors.

Section 1170(b)(2) states, in relevant part,

> "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial….." (§ 1170(b)(2).)[8]

---

[8] Some aspects of former section 1170(b) were unchanged and simply renumbered under the new law, including that statements in aggravation and mitigation may be submitted before judgment is imposed, the records the court may consider (§1170(b)(4)), the court's obligation to set forth on the record the facts and reasons for choosing the sentence imposed (§ 1170(b)(5)); and the preclusion from imposing an upper term using

This is fully consistent with section 1170(b)(1). Section 1170(b)(1)'s proscription on exceeding the middle term is not followed in section 1170(b)(2) by a discretionary option to select an upper term sentence if, in the court's discretion, such a sentence is warranted based on aggravating circumstances. There is no *in-the-court's-discretion* language prefacing this exception. It is not framed electively as an *unless* or an *or* option, but as an exception that may occur "only when" aggravating circumstances "justify" it. (§ 1170(b)(2).)

The statute does not simply allow a court to select an upper term because it best serves the interests of justice or because it appears warranted or supported. Instead, in distinct contrast with the former sentencing scheme, the court's decision to impose an upper term is now expressly framed around whether circumstances justify invoking the exception to the rule that the middle term is the default maximum sentence. Contrary to the majority's approach, section 1170(b)(1)'s words directing the sentencing court "not to exceed the middle term" are not rendered superfluous under section 1170(b)(2).

Far from undercutting section 1170(b)(1)'s rule, section 1170(b)(2) underscores that the middle term is the presumptive maximum term. In contrast to former section 1170(b), there must be justifying reasons and facts to exceed the middle term— the court no longer has full discretion to impose an upper term. Those reasons and facts must be proven to the new standards articulated in section 1170(b)(2), or involve a prior conviction as articulated in section 1170(b)(3). Section 1170(b)(2) focuses on these two aspects in equal measure—one is the justification necessary to overcome the default middle term maximum, and the other is how that justification is to be proven and/or established.

---

the fact of any enhancement upon which sentence is imposed under any provision of law (*ibid*).

The plain language of this framework bakes in a presumption the middle term is the default maximum sentence. (See *Wandrey, supra*, 80 Cal.App.5th at p. 982 [noting new law specifies a statutory presumption in favor of the middle term]; see also *People v. Flores, supra*, 73 Cal.App.5th at p. 1038 [one ameliorative benefit of Sen. Bill 567 is presumptive middle term maximum].) Senate Bill 567's legislative history is express as to the existence of this presumption: "SB 567 creates a presumption of sentencing judg[]ment not to exceed the middle terms …." (Sen. Rules Com., Office of Sen. Floor Analyses, voting on Sen. Bill 567 (2020–2021 Reg. Sess.) as amended Sept. 3, 2021, p. 4 [quoting bill author's comments].)[9]

Had the Legislature been concerned only with the burden and method of proof of aggravating circumstances to impose an upper term, it could have retained the post-2007 sentencing structure allowing the trial court to select any of the three terms in its discretion, and simply required the circumstances supporting an upper term be proven to the standards articulated in Senate Bill 567. Instead, it chose to expressly bind a sentencing court to a middle-term maximum sentence to be exceeded "only when" aggravating circumstances justify it. (§ 1170(b)(2).) How extensively the court's sentencing discretion has been limited by this embedded presumption is a question only

---

[9] The author's comments that Senate Bill 567 created a presumption of sentencing judgment not to exceed the middle terms was followed by the phrase "unless there are circumstances in aggravation of a crime that justify the imposition of the upper term." (Sen. Rules Com., Office of Sen. Floor Analyses, voting on Sen. Bill 567 (2020–2021 Reg. Sess.) as amended Sept. 3, 2021, p. 4 [quoting bill author's comments].) The enacted version of the law states that a "court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term .…" (§ 1170(b)(2).) The statute's wording emphasizes the presumptive nature of a sentence not exceeding the middle term that was expressly intended: it is not just that a court may impose a sentence not exceeding the middle term unless it concludes, in its discretion, an upper term is justified by aggravating circumstances; rather, it is that a court, bound not to exceed the middle term, may conclude this presumptive rule is overcome "only when" (*ibid.*) there are justifying aggravating circumstances.

23.

of degree; the fact *that* the court's discretion has been meaningfully circumscribed is patent under the language of the statute.

This new presumption under section 1170(b) is squarely analogous to the one addressed in *Gutierrez*. There, in light of *Miller v. Alabama* (2012) 567 U.S 460 (*Miller*), the court examined a judicially construed presumption under section 190.5(b) that favored a sentence of LWOP for 16- to 17-year-old juvenile offenders convicted of special circumstance murder.[10] (*Gutierrez, supra*, 58 Cal.4th at pp. 1360–1361.) In disapproving this presumption, the court explained that although a rule in favor of LWOP did not eliminate a trial court's discretion to make an individualized sentencing decision required under *Miller*, the presumption expressed a preference for LWOP and circumscribed the trial court's discretion to that extent. (*Gutierrez, supra*, at pp. 1381–1382.)

The court reasoned, "[i]t is one thing to say that a court, confronting two permissible sentencing options, may impose the harsher sentence if it finds that sentence justified by the circumstances. It is quite another to say that a court, bound by a presumption in favor of the harsher sentence, must impose that sentence unless it finds good reasons not to do so." (*Gutierrez, supra*, 58 Cal.4th at p. 1382.) Because of the presumption's effect on the trial court's discretion to select the lesser sentence, its imputation would create a serious constitutional question under *Miller*, and our high court

---

**10**      In *Miller,* "the United States Supreme Court ruled that 'mandatory [LWOP] for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on "cruel and unusual punishments,"' relying extensively on differences between juveniles and adults with regard to their culpability and capacity for change." (*Gutierrez, supra*, 58 Cal.4th at p. 1360.) In examining section 190.5(b) under *Miller*, the California Supreme Court in *Gutierrez* held that because the sentencing regime created by section 190.5(b) authorized and required consideration of the distinctive attributes of youth highlighted in *Miller*, there was "no constitutional infirmity with section 190.5(b) once it is understood not to impose a presumption in favor of [LWOP]." (*Gutierrez, supra*, at p. 1361.)

declined to interpret section 190.5(b), to include it.  (*Gutierrez, supra*, at p. 1382 [given *Miller*'s conception of a proper individualized sentencing inquiry, a "serious constitutional concern would arise" if § 190.5(b) were interpreted to include a rule circumscribing the court's discretion by presuming in the first instance LWOP is the appropriate sentence for special circumstance murder committed by 16- or 17-year-old juvenile].)

The court ultimately concluded that LWOP sentences imposed in this context while the presumption was legally in effect could not reflect an exercise of the sentencing court's informed discretion.  (*Gutierrez, supra*, 58 Cal.4th at pp. 1390–1391.)  The necessary remedy was to remand for resentencing unless the record clearly indicated the trial court would have reached the same conclusion even if it had been aware of the scope of its discretion.  (*Id.* at p. 1391.)

The reasoning in *Gutierrez* applies with equal force to Senate Bill 567's presumptive middle term maximum that can be exceeded only when aggravating circumstances are deemed to justify it.  Newly enacted section 1170(b)(1) and (b)(2) state an explicit preference for a middle term maximum sentence that was merely inferable about LWOP from the language of section 190.5(b).  These two subdivisions of section 1170(b) circumscribe the court's discretion by creating an express rule that, in the first instance, the middle term is the maximum appropriate sentence just as the interpreted rule in favor of the harsher sentence in *Gutierrez* limited the trial court's discretion by presuming, in the first instance, LWOP was the appropriate sentence.  (*Gutierrez, supra*, 58 Cal.4th at p. 1382.)  Both presumptions place weight on the scale in the direction of the sentence they favor before any surrounding circumstances are even considered.

Any weighing of aggravating circumstances must occur under the lens of this new rule favoring the middle term as the maximum sentence.  For example, suppose a trial court imposed an upper term sentence based on one aggravating circumstance of prior convictions.  If that circumstance was deemed properly considered under *Apprendi* and

properly (or harmlessly) considered under the new state law requirements, a sentencing court might very well yet conclude under the new sentencing scheme that the exception for exceeding the now-presumptive middle term maximum is not justified on that single aggravating circumstance. (See *Gutierrez, supra*, 58 Cal.4th at p. 1382 ["When the choice between two sentences must be made by weighing intangible factors, a presumption in favor of one sentence can be decisive in many cases."].)

For this reason, *any* prejudice analysis applied to the aggravating circumstances originally considered addresses only whether the upper term could be legally imposed under the new law. Even if *all* of the aggravating circumstances could be deemed permissibly considered or harmlessly so under a harmless error test (whether that is a *Chapman*-style test or a *Watson*-style test or a combination of the two), we are still left with the question of whether a sentencing court would impose an upper term under the newly altered sentencing framework. (*Gutierrez, supra*, 58 Cal.4th at pp. 1367, 1391 [sentencing court's statement that it had "'thought long and hard about what punishment is appropriate'" and was "'absolutely convinced'" that LWOP was the "'only thing that the Court can do that could redress'" violence inflicted in the case did not clearly indicate LWOP would again be imposed in the absence of the judicially construed statutory preference for LWOP].)

In light of this new presumptive maximum middle term, *Flores*, *Lopez* and *Dunn* do not explain how proper consideration (let alone *harmless* consideration) of one or all of the aggravating circumstances under the new law reflects a sentencing decision made in the exercise of informed discretion or how it ensures a defendant has had a fair opportunity to obtain the ameliorative benefit of the law. All defendants are entitled to the former (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8), and defendants whose judgments of conviction are not final for *Estrada* purposes are entitled to the latter (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 307).

26.

Consistent with my interpretation of section 1170(b) and application of *Gutierrez*, the imposition of an upper term under the former sentencing scheme cannot reflect an exercise of informed discretion under the new law. As a result, any harmless error approach is inadequate to measure the effect of the new presumption on the original sentencing decision. (*Gutierrez, supra*, 58 Cal.4th at pp. 1381–1382, 1390–1391.)

At best, all that can be ascertained in a threshold application of the harmless error analysis is whether a court could legally impose an upper term sentence under the new law given the circumstances considered, not that it would do so in the exercise of its informed discretion in the first instance.

### 3. Once Upper Term is Deemed Legally Viable Under the New Law, the Need for Resentencing Must Be Assessed Under *Gutierrez*, Not Another Harmless Error Analysis

When not all of the aggravating circumstances relied on at the original sentencing hearing were properly or harmless considered under the new law, courts such as *Lopez* and *Dunn* invoke a second harmless error analysis to ascertain whether there is a reasonable probability the sentencing court would have imposed a lesser term had it not considered the improper circumstances. For the same reasons articulated above, I depart from *Lopez* and *Dunn* and their adoption of *Watson* to guide this inquiry.

The harmless error test under *Watson* has indeed been applied in cases where a sentencing court considered improper sentencing factors. (See *People v. Price* (1991) 1 Cal.4th 324, 492 (*Price*); see also *People v. Avalos* (1984) 37 Cal.3d 216, 233 (*Avalos*).) But, in those cases, the underlying sentencing scheme had not changed in the interim. The sentencing court revealed its sentencing choice under a particular sentencing scheme, and the reviewing court decided whether there was a reasonable probability the court's lawful exercise of its discretion on remand would lead it to make a different choice under the *same* sentencing framework.

While improperly considered sentencing factors may be involved in retroactive

application of Senate Bill 567, that is not the only concern. As explained above, the new sentencing scheme has meaningfully altered the scope of the trial court's discretion with the new presumption. When a trial court is unaware of the full scope of its sentencing discretion because, for example, legal presumptions have shifted (*Gutierrez, supra*, 58 Cal.4th at p. 1391) or different discretionary sentencing choices exist, "an application of the 'reasonable probability standard' [under *Watson*] requires the reviewing court to decide what choice the trial court is likely to make in the first instance, not whether the court is likely to repeat a choice it already made." (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 427.)

Different from cases such as *Price* and *Avalos*, where the sole issue involved in application of *Watson* was improperly considered sentencing factors, determining what sentencing choice a trial court would make in the first instance pursuant to Senate Bill 567 becomes a far more speculative proposition under a harmless error test. Trying to assess probabilities under *Watson* in the context of Senate Bill 567 effectively recasts the reviewing court into the role of sentencing court, weighing for the first time whether particular aggravating circumstances justify exceeding the presumptive maximum middle term. Prognosticating this way carries the risk of denying a defendant one of the primary ameliorative benefits of the new law that contributes to its retroactive application in the first place, effectively thwarting the Legislature.

To avoid unnecessary speculation about what a sentencing court would do in the exercise of its *informed* discretion in the first instance under Senate Bill 567, the appropriate remedy is to remand for resentencing unless the record "'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*Gutierrez, supra*, 58 Cal.4th at p. 1391.)[11]

---

[11] Notably, although *Lopez* expressly indicated the second prong of its framework was to be assessed under *Watson* (*Lopez, supra*, 78 Cal.App.5th at p. 467, fn. 11), the court actually conducted its analysis under *Gutierrez* and concluded the record did not

In sum, whether resentencing of an upper term sentence is the appropriate remedy on retroactive application of Senate Bill 567 involves two relevant questions. The first is whether, given the aggravating circumstances considered, the upper term sentence *could* still be legally imposed under federal and state law. The answer to that question lies in the application of *Apprendi* and the new state law requirements under Senate Bill 567. But even if an upper term sentence could still be legally imposed given the set of aggravating circumstances relied upon, resentencing then hinges on whether a sentencing court would impose an upper term sentence under the new law. As the trial court's discretion to impose an upper term sentence has been circumscribed under the new sentencing framework, that inquiry must be made under *Gutierrez*.

## III. Remand for Resentencing is Warranted

Turning to application of the foregoing, the relevant first question is whether, given the aggravating circumstances considered, the upper term could still be legally imposed under federal and state law. Defendant was sentenced to the upper three-year term for violation of section 451, subdivision (d), in Madera Superior Court case No. MCR060145, and a consecutive eight months for violation of section 422, subdivision (a), in Madera Superior Court case No. MCR060560. The trial court imposed the upper term based on the following: (1) prior convictions as an adult are numerous and increasing in seriousness; (2) defendant was on probation when he committed these offenses; (3) his performance on probation prior to the conviction was poor; and (4) his performance on probation following the conviction was unsatisfactory.

Applying *Black II* and *Sandoval*, because a defendant remains eligible for an upper term sentence based on a single aggravating circumstance under the new law, only one aggravating circumstance needs to be proven in conformity with Sixth Amendment

---

"clearly indicate" the trial court would have exercised its discretion to reimpose an upper term (*Lopez, supra*, at p. 468).

principles (or harmlessly considered as articulated in *Sandoval*) for an upper term sentence to pass constitutional scrutiny. (*Black II, supra*, 41 Cal.4th at p. 812; *Sandoval, supra*, 41 Cal.4th at pp. 838–839; see *Flores, supra*, 75 Cal.App.5th at pp. 500–501, review denied.)[12] For the same reason, one aggravating circumstance found harmless under *Sandoval* necessarily means the circumstance was harmless under the less stringent *Watson* standard, and, as a matter of state law, the trial court *could* legally impose an upper term sentence under section 1170(b)(2) based solely on that circumstance.

Assuming for the sake of argument that one of the aggravating circumstances the trial court found and relied on here is viable for Sixth Amendment purposes under the *Sandoval* harmless error test, and, thus, that an upper term sentence also remains legally viable under state law, resentencing is still required under *Gutierrez*.

Even if all of the aggravating circumstances were found in accordance with section 1170(b)(2) and (b)(3), the record still does not clearly indicate the trial court would impose the upper term had it been aware of the presumptive middle term maximum sentence. At bottom, defendant was sentenced to the upper term based on three prior misdemeanor convictions and poor performance on probation. Without weighing these circumstances under the lens of the presumptive middle term maximum, the resulting upper term was not imposed in an exercise of the trial court's informed discretion. Other than reciting the aggravating circumstances, the trial court said nothing at sentencing that clearly reflects it would impose an upper term again based on these same circumstances under the new presumptive middle term maximum.

---

[12] To date, no court has concluded *Black II* and *Sandoval* are inapplicable in the context of Senate Bill 567 to assess constitutional error, and our Supreme Court declined to depublish *Flores* in denying review. *Lopez* applied the higher *Chapman* standard to assess whether the trial court's reliance on all aggravating circumstances was harmless, but did not explain why other than pointing to the state law requirements under section 1170(b)(2). With no argument here that the holdings in *Black II* and *Sandoval* are inapplicable in the context of Senate Bill 567, I do not reach that issue.

30.

Added to this, defendant's prior convictions are limited to three misdemeanors, all of which were committed when defendant was a youth under the age of 26.[13] Even his current offenses were committed just one month after defendant turned 26.[14] Had the current offenses been committed just a few weeks earlier, defendant would have been entitled to sentencing consideration under section 1170(b)(6), which creates a presumption of a low term sentence if the person was under the age of 26 years at the time of the offense. (§ 1170, subd. (b)(6)(B).) This, too, is new law under Senate Bill 567. (Stats. 2021, ch. 731, § 1.3, p. 27.) While defendant's age at the time of the current offenses does not require consideration of section 1170(b)(6), it is an important aspect of the new sentencing scheme the trial court might take into account as a second mitigating factor in determining whether upward departure from the middle term is truly justified in this case. This record does not clearly indicate the upper term would be imposed again had the court been aware of the presumptive middle term maximum, and the appropriate remedy is to remand for resentencing under *Gutierrez*.

This conclusion is based on the assumption all the aggravating factors were properly considered under the new law. In actuality, because the trial court did not have the benefit of the new law, *none* of the aggravating circumstances were found in accordance with the requirements under section 1170(b)(2) or (b)(3). When the factual findings underlying the aggravating circumstances are examined in light of these new procedural requirements and the harmless error test employed by the majority, the need for resentencing becomes even more strikingly clear.

---

[13]     These misdemeanor offenses were committed in December 2015, July 2016, and August 2017. Defendant did not turn 26 years old until 2018.

[14]     Although the narrative portion of the pre-plea probation report recites that the arson offense in Madera Superior Court case No. MCR060145 took place on August 17, 2017, the criminal complaint alleges this offense occurred on August 17, 2018—when defendant was 26 years old, not 25 years old.

The first aggravating circumstance the trial court relied on was that defendant's prior convictions were *both* numerous "and increasing in seriousness." As the majority correctly points out, it is unclear exactly which convictions the trial court considered in making these findings.[15] The post-plea probation reports' recitation of defendant's criminal record include a misdemeanor vandalism conviction entered after the conviction for defendant's current offense, and lists the current conviction in count 1 of Madera Superior Court case No. MRC060145 for arson (§ 451, subd. (d)). Only three of the convictions listed are actually *prior* convictions, and they are all misdemeanors.

While a judicial finding of three prior convictions has been upheld in a different context as sufficiently numerous to support such an aggravating circumstance (see *People v. Searle* (1989) 213 Cal.App.3d 1091, 1098), I do not share the majority's beyond-reasonable-doubt certainty a jury would assess this aggravating circumstance the same way as the trial court might. (See *Sandoval, supra*, 41 Cal.4th at p. 840 [imprecise quantitative evaluations of the facts may make it difficult for reviewing court to conclude with confidence the jury would assess facts the same way as trial court].) This is especially so since the trial court also found the prior convictions were increasing in seriousness—a feature of this circumstance the majority does not examine and one that is highly subjective. (*Ibid.* [aggravating circumstance resting on subjective standard may be difficult for reviewing court to conclude with confidence jury would assess facts the same way as trial court].) Parsing the court's aggravating circumstance finding to assume a jury would conclude three prior convictions are numerous is more akin to a search for substantial evidence to support the aggravating circumstance finding than a harmless

---

**15** The fact that we do not know with certainty which convictions the trial court considered in reaching this finding highlights the practical necessity of proving prior convictions with certified records of conviction rather than a probation report. Moreover, everything we think we know about the prior convictions in this case is built on only an assumption there is extra-record evidence that actually supports the double hearsay recited in either the pre- or post-plea probation reports.

32.

error analysis, particularly under *Chapman*.  (See *People v. Sek* (2022) 74 Cal.App.5th 657, 668 ["it is not enough" under *Chapman* "to show that substantial or strong evidence existed to support a conviction under the correct instructions"].)

As to the fourth aggravating circumstance—defendant's unsatisfactory performance on probation following his conviction—the majority concludes only one violation of probation (rather than two violations) was properly considered in making this aggravating circumstance finding.  Thus, as with the prior convictions considered, some facts underlying this aggravating circumstance were improperly found by the trial court.

What ultimately remains is an upper term based on two aggravating circumstances improperly but harmlessly considered, a prior convictions aggravating circumstance based on facts and a record so unclear we do not know what the trial court actually weighed in that analysis (or how a jury would evaluate the two factual aspects underlying this circumstance), and one aggravating circumstance (performance on probation following conviction) for which half the supporting facts were prejudicially considered. Even trying to resuscitate some of the aggravating circumstance findings under a harmless error rubric, the factual support underpinning them is significantly eroded.

Setting aside my doubt the first aggravating circumstance could be held harmlessly considered, since the record does not offer any insights into how the trial court weighed the numerosity and seriousness aspects of the prior convictions circumstance against each other (or generally in relation to the other aggravating circumstances), it is impossible to conclude to any degree of certainty or probability how the court would evaluate that circumstance, especially after sheering off some of the underlying facts and findings as the majority does.  The same is true of the fourth aggravating circumstance.  This highlights the inadequacies of the harmless error analysis in this context, and, here, really amounts only to guesswork about how the trial court might weigh a different compilation of facts under a different sentencing scheme. Through no fault of the trial court, when I stack up the factually gutted version of these

aggravating circumstances in view of the presumptive middle term maximum, it is all the more apparent the original upper term sentence does not reflect an exercise of informed discretion under the new law.

This record provides no clear indication the trial court would find upward departure from the new presumptive middle term was justified under the existing aggravating circumstances, let alone some factually weakened version of those circumstances. As such, resentencing is required and I would remand for that purpose. (*Gutierrez, supra*, 58 Cal.4th at p. 1391.) For these reasons, I respectfully dissent from the majority's reasoning and conclusions in part II. of the Discussion.


MEEHAN, J.